UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AALIYAH T. LANE,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:26-cv-1310-GSA

**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(Docs. 12, 15)**

## I. Introduction

Plaintiff Aaliyah T. Lane seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do not support the ALJ's non-disability decision.

## II. Factual and Procedural Background

On February 28, 2023, the claimant filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning January 23, 2023. The claim was denied initially on October 11, 2023, and upon reconsideration on July 30, 2024. The claimant appeared and testified at a hearing in person on March 21, 2025. The ALJ issued an unfavorable decision on May 5, 2025. The Appeals Council denied review on December 11, 2025. On February 13, 2026, Plaintiff filed the instant complaint in this Court.

## III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence

in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. See Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins, 466 F.3d at 882) (internal quotation marks omitted). It is not this Court's function to second-guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Moreover, "[T]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Finally, judicial review is limited to the reasons relied on as stated in the ALJ's decision, and post hoc rationalizations are not to be considered. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). See Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by

ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). Thus, the Court's review is limited to the reasons actually cited by the ALJ in his decision. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

## IV. The Five Step Sequential Evaluation Process

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. See 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. See Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. See id. at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines appearing [*4] in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Importantly though, "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984); see Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980) (testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence).

Further, when a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). As stated above and repeated here, "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 23, 2023. AR 22. At step two, the ALJ determined that Plaintiff had severe impairments of: 1- cervical and lumbar degenerative disc disease; 2- migraines; 3- right carpal tunnel syndrome; 4- obesity; 5- major depressive disorder; and 6- anxiety disorder. AR 22. (Emphasis added)

The ALJ further found that Plaintiff had the following non-severe impairments: 1- hypertension; 2- asthma; 3- granular cell tumor removal from 2012; and 4- thoracic spine mild degenerative changes. AR 22.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 22.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps or stairs; cannot climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch; cannot crawl; must avoid unprotected heights, workplace hazards, and moving machinery; can frequently reach to shoulder height with the right upper extremity and occasionally reach above shoulder height with the right upper extremity; can frequently handle and finger with right hand; cannot work with vibrations; must avoid heat, cold, and humidity; requires a work environment with no more than moderate noise; can occasionally push and pull with the upper and lower extremities; cannot operate foot controls; is limited to simple, routine tasks and no production pace work; can have occasional interaction with supervisors, coworkers, and the public; can tolerate occasional changes to a routine work setting; requires use a cane for ambulation greater than fifty feet; and would be absent from work one day per month. (Emphasis added).

AR 24–25.

At step four, the ALJ concluded that, "The claimant is unable to perform any past relevant work." AR 30. At step five, in reliance on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: Touchup Screener, Document Preparer, and Stem Mounter. AR 31. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the alleged onset date of January 23, 2023. AR 32.

## VI. Issues Presented

Plaintiff sets forth the following claim of error: "the ALJ erred in the evaluation of Plaintiff's testimony." MSJ at 16, Doc. 12. Plaintiff then explains her claim of error in more detail as follows, "The ALJ Erred By Failing To Provide Specific, Clear And Convincing Reasons Supported By Substantial Evidence To Reject Plaintiff's Subjective Pain Testimony." MSJ at 17, Doc 12. Finally, Plaintiff narrows her claim of error to just one issue as evidenced from a reading of her MSJ (Doc. 12) and Reply (Doc. 17). That issue is her migraine symptomology. Respondent seems to agree stating, "Plaintiff seems to primarily take issue with the ALJ's assessment of Plaintiff's migraine impairment and symptoms (ECF Doc. 12, pgs. 18-25)". Resp at 6, Doc 15.

As support, it is the only impairment discussed in her argument. Further, at the conclusion of her argument in the MSJ Plaintiff states, "In short, the ALJ failed to provide a 'clear and convincing' reason supported by substantial evidence to justify discounting Plaintiff's subjective testimony regarding her migraine headaches and the failure to do so constitutes legal error." MSJ at 23 (emphasis added). Then, in her reply, Plaintiff's argument header reads "THE ALJ FAILED TO APPLY CORRECT LEGAL STANDARDS TO THE EVALUATION OF PLAINTIFF'S SUBJECTIVE TESTIMONY REGARDING HER MIGRAINE HEADACHES." Reply at 2. (emphasis added).

Thus, because Plaintiff has focused her claim to this single issue, Plaintiff's other impairments will not be addressed herein.

### A. Relevant Law

#### 1. RFC Generally

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

#### 2. Subjective Complaints

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison, 759 F.3d at 1014; Smolen,

80 F.3d at 1281; SSR 16-3p. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. SSR 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p.

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks omitted). Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to

conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Also, "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022).

All in all, factors an ALJ may consider when evaluating a claimants subjective complaints include: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**B. Analysis**

In support of her claim, Plaintiff states, "Ms. Lane testified that, among her other medical impairments, she experiences migraine headaches two to three times per week than can last for two to three days." MSJ at 17.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (AR 25), and because the ALJ found no malingering, the ALJ was required to provide clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom testimony. The ALJ provided the following summary of Plaintiff's testimony that is relevant to Plaintiff's claim of error:

> She also testified she experiences migraines if she moves around too much or if she lifts or bends. She gets migraines two to three times per week that can last

for two to three days.

AR 25

The ALJ continued:

> The claimant also reported chronic migraines occurring every other day in March 2023 (B5F/6). She was started on Imitrex and amitriptyline, and in May 2023 endorsed significant improvement with a reduction in the frequency of headaches (B17F/128).
>
> AR 26

The ALJ then linked Plaintiff's migraine symptoms to the RFC as follows:

> Chronic migraines support a work environment with no more than moderate noise.
>
> AR 28 (Found at Doc 8-3)

Plaintiff draws specific attention to the following testimony: "Ms. Lane testified that, among her other medical impairments, she experiences migraine headaches two to three times per week that can last for two to three days, are accompanied with nausea and blurred vision when most severe, and when experiencing a migraine, she needs a darkened room with no activity." AR 79, 83-84, 308-309, 352-353.

Plaintiff further explains, "With respect to Ms. Lane's chronic migraine headaches, at her visit with her primary care providers at Clinica Sierra Vista on March 23, 2023, she reported she experienced migraines for many years that were accompanied by light sensitivity, nausea, and visual floaters. (AR 450) She experienced a migraine headache every other day. Id. Her current medication consisted of propranolol (80 mg). (AR 457) She was prescribed the additional medications of Imitrex (50 mg) and amitriptyline (10 mg). (AR 452)".

MSJ at 4

Plaintiff next addresses evidentiary categories in the following order:

### 1. Objective Evidence

As Plaintiff acknowledges, the ALJ explained that "The claimant also reported chronic migraines occurring every other day in March 2023 (B5F/6). She was started on Imitrex and amitriptyline, and in May 2023 endorsed significant improvement with a reduction in the frequency of headaches."

AR 26 (citing AR 450, 1077).

However, and interestingly, the only relevant accommodation imposed in the RFC was simply a limitation of a moderate noise environment. More specifically, the ALJ found that Plaintiff's "Chronic migraines support a work environment with no more than moderate noise." AR 27. This unadorned limitation falls well short of providing an adequate accommodation for Plaintiff's migraines. For instance, it does not address Plaintiff's concern that when experiencing a migraine episode she needs a darkened room with no activity.

Secondly, as Plaintiff further explains:

> The ALJ then determined "greater limitations are not supported", discounting Ms. Lane's subjective testimony generally, <u>on the basis of</u> "physical examinations [that] showed normal range of the cervical spine", "normal gait and no motor weakness", and noting that at her consultative examination "she was observed to sit comfortably, get up and out of a chair, and get on and off a bench without difficulty".

MSJ at 18 (emphasis added) (citing AR 28)

To Plaintiff's point, the ALJ cited numerous objective findings without connecting them to Plaintiff's migraines:

> However, greater limitations are not supported. Despite the evidence cited above, physical examinations also showed normal range of the cervical spine (B5F/14; B5F/8; B10F/26, 30; B21F/7). She was also found to have normal gait and no motor weakness (B5F/8; B7F/8; B10F/9, 26, 30; B12F/59; B23F/19; B25F/6). Additionally, she was observed to sit comfortably, get up and out of a chair, and get on and off a bench without difficulty (B9F/4). Mental status examinations also revealed normal behavior, cooperative attitude, good eye contact, good hygiene, linear and logical thoughts, no attentional abnormality, intact memory, and appropriate insight and judgment (B4F/1; B5F/13; B15F/26,

> 36, 43; B19F/8-9). That such findings have been present on multiple examinations suggests that, in spite of some functional restrictions due to physical and symptoms, greater restrictions are not warranted. Treatment for the claimant's impairments has been essentially routine and conservative; the routine follow-up appointments evidenced in the record are not indicative of the excruciating levels of pain and mental distress the claimant has reported. Further, conservative therapies were recommended by neurosurgery, and she was treated with a brace for her carpal tunnel syndrome (B4F/10; B21F/8). The claimant also reported some improvement in her neck pain and migraines with medication (B15F/12; B17F/128). In addition, the claimant was found in no distress or no acute distress, a finding inconsistent with debilitating symptoms (B5F/7, 14; B9F; B10F/9, 30; B12F/59; B15F/13).

AR 28.

Because these objective findings are largely untethered to any apparent connection to Plaintiff's migraines, they do not constitute clear and convincing reasons for discrediting Plaintiff's migraine testimony.

**2. Effective Treatment**

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ explained:

> The claimant also reported chronic migraines occurring every other day in March 2023 (B5F/6). She was started on Imitrex and amitriptyline, and in May 2023 endorsed significant improvement with a reduction in the frequency of headaches (B17F/128).

AR 26.

This is essentially the only direct statement the ALJ made in regard to Plaintiff's migraine treatment. But as Plaintiff explains, this finding is not inconsistent with her symptom reports:

> As noted above, Ms. Lane's testimony and responses to the Agency's headache questionnaires reflect that she experiences migraines two to three times per week. (AR 79, 83-84, 308-309, 352353) Having a migraine two to three times a week – rather than every other day noted in the March 23, 2023 Clinica Sierra

> Vista treatment note – is an "improvement" and "reduced in frequency"; the May 1, 2023 treatment note cited by the ALJ supports Ms. Lane's testimony; it does not contradict it.

MSJ at 20.

As explained in the case of Eduardo M. v Bisignano (2026 US Dist Lexis 220839; S. D. Cal. Sept. 2026), "… even if Plaintiff's migraine symptoms had improved at certain times, the record does not reflect that Plaintiff experienced migraines less than once or twice a month." *See also Hahn v. Kijakazi*, 725 F. Supp. 3d 994, 1015 (N.D. Cal. 2024) ("to the extent the ALJ noted that Hahn 'reported improvement of her headaches with medication treatment' and that Hahn's headaches resolved with Meclizine, [] the ALJ did not specify the corresponding effective date or explain why relief from medication is inconsistent with Hahn's migraine testimony"); *see cf. Hay*, 2020 U.S. Dist. LEXIS 92572, 2020 WL 2745715, at *9 (finding ALJ erred in finding that plaintiff was not credible because his symptoms had improved, when the record reflected that, even with medication, plaintiff still had one or two headaches a week).

Also in support is the following taken from the case of Deyanira C. (citation provided below): "In any event, the fact that Plaintiff takes medication for migraines is not, without more, evidence that her migraines are well controlled. For instance, nothing in either exhibit cited by the ALJ indicates how often Plaintiff takes the medication, how effective the medication is, or whether Plaintiff's method of controlling her migraines would allow her to work. In other words, while the medication may help Plaintiff, that does not necessarily mean Plaintiff's migraines were effectively controlled with medication; it is possible that such relief is only temporary. *See Garcia v. Astrue*, No. 12CV992-WQH BLM, 2013 U.S. Dist. LEXIS 61039, 2013 WL 1797029, at *14 (S.D. Cal. Mar. 13, 2013), *report and recommendation adopted*, No. 12CV992-WQH-BLM, 2013 U.S. Dist. LEXIS 61027, 2013 WL 1797032 (S.D.

Cal. Apr. 26, 2013) (ALJ erred in discounting the plaintiff's credibility; [*15] "while there is evidence supporting a statement that medication temporarily helped [p]laintiff's memory problems, there is not substantial evidence supporting the ALJ's conclusion that [p]laintiff's medication controlled her symptom")". Deyanira C. v. Comm'r of Soc. Sec., 2026 U.S. Dist. LEXIS 173774 (N.D. Cal. Aug. 4, 2026).

Finally, as Plaintiff points out, the ALJ overlooked later dated records:

> For instance, a March 21, 2024 Clinica Sierra Vista treatment note assessed Ms. Lane's migraine headache pain as "not well controlled" and the existing dosage of Imitrex was doubled. (AR 998) An August 19, 2024 Clinica Sierra Vista treatment note reflects an additional medication, Rimegepant, was prescribed for her ongoing migraine headaches. (AR 964-965) A single treatment note reflecting some level in improvement of her migraines (consistent with Ms. Lane's testimony), and another treatment note that does not even discuss Ms. Lane's migraines, does not justify the failure to acknowledge medical records showing her ongoing issues with severe migraine headaches.

MSJ at 21.

Similar then to the cases of <u>Eduardo</u> and <u>Deyanira</u>, here the ALJ's cited treatment note at AR 26 concerning migraine improvement with Imitrex and Amitriptyline, is bereft of important and relevant detail. Thus, the ALJ's reliance on one isolated visit which noted improvement with treatment, is not a clear and convincing reason to discredit Plaintiff's testimony concerning the effects of her migraines.

### 3. <u>Daily Activities</u>

An ALJ may use daily activities to discredit a Plaintiff's testimony on two grounds: 1) if the activities contradict the claimant's other testimony, or 2) the activities "meet the threshold for transferable work skills." <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007).

As to daily activities, the ALJ explained:

> The claimant also reported attending church, cooking, performing household chores, taking short daily walks, doing computer work daily, attending classes in school, and shopping independently (B8F; B9F; B15F/7;

> B17F/123). Given the presence of normal or unremarkable findings, a conservative treatment, and notations of activities, greater restrictions are not warranted.
>
> AR 28.

Elsewhere the ALJ also noted:

> In terms of her daily activities, she reported she cooks, vacuums, mops, takes out the trash, washes dishes and laundry, takes walks outdoors every day, and does computer work about one hour per day (B9F/3). On evaluation, she was observed sitting comfortably without antalgic gait (B9F/4). She had generalized discomfort with limited range of motion of the cervical and lumbar spine, slight pain over the right wrist with reduced range of motion, and reduced or absent reflexes but otherwise negative Tinel's and Phalen's signs, full strength of the bilateral upper and lower extremities, and full bilateral grip strength (B9F/4-5).
>
> AR 26.

However, the ALJ does not explain how these activities are inconsistent with Plaintiff's testimony concerning migraine frequency and duration. For example, the ALJ does not explain how Plaintiff's computer work for 1 hour per day is in tension with Plaintiff's migraine symptoms. Additionally, the ALJ's citing to a number of activities that relate to Plaintiff's exertional capacity were likewise not shown by the ALJ to be inconsistent with Plaintiff's testimony. In the end, the ALJ's discussion of daily activities in relation to Plaintiff's migraine testimony is neither insightful nor convincing.

## VII. <u>Conclusion</u>

Based on the above discussion, the undersigned finds that the ALJ's non-disability determination is not supported by substantial evidence. Remand is therefore appropriate for the ALJ to more carefully and comprehensively evaluate the evidence concerning Plaintiff's migraines, which may also necessitate a further development of the record. <u>See</u> <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (noting that, generally when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to

remand to the agency for additional investigation or explanation.).

**IX. Order**

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is **ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 12 is, **GRANTED.**
2. Defendant's Cross Motion, ECF No. 15, is **DENIED**.
3. That this action is **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.
4. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security

IT IS SO ORDERED.

Dated: **November 8, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE